UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORVEL LASSERE                                  CIVIL ACTION

VERSUS                                          NO. 13-5430

KEITH CARROLL ET AL.                            MAGISTRATE JUDGE
                                                JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS

Plaintiff, Norvel Lassere, filed a Motion for Protective Order, Record Doc. No. 48, seeking to prevent disclosure to defendants of the recorded statements of Lynchell Denis and her mother, Adaline Denis Turner. Denis and Turner were the only non-party eyewitnesses to the shooting death of Lassere's mother, Barbara Lassere ("Mrs. Lassere") by St. John the Baptist Parish Sheriff's deputies in the early morning hours of January 24, 2013, which is the subject of this civil rights action by plaintiff against the Sheriff and the deputies involved in the shooting. Plaintiff's counsel recorded the statements of Denis and Turner at his office on January 26, 2013, only two days after the shooting incident. Plaintiff's co-counsel was present and both attorneys asked questions of the witnesses. Denis and Turner never gave statements to the Sheriff's office or the Louisiana State Police, which investigated the shooting. Thus, the existence and identities of these two eyewitnesses were clearly known to plaintiff's counsel and unknown to defendants until five days before the final pretrial conference held on September 29, 2014.

The instant case was filed on August 14, 2013. A pretrial order was entered by the presiding district judge on October 3, 2013, with a discovery deadline of April 10, 2014, and trial scheduled for May 27, 2014. Record Doc. No. 14. After the parties consented to proceed before a magistrate judge, the trial was continued to October 14, 2014, with a final pretrial conference set for September 29, 2014. Record Doc. No. 34.

Despite plaintiff's knowledge within two days of the shooting that Denis and Turner had witnessed it, he did not disclose their existence and identities to defendants until September 24, 2014, five days before the final pretrial conference, when he complied with the court's order granting defendants' motion to compel him to respond to discovery requests that had been served on July 3, 2014. Plaintiff's counsel admitted to the court during the pretrial conference that they knew the identities of these witnesses long before the July 29, 2014 deadline to file their witness list, Record Doc. No. 34, but they did not provide the names to defendants until the court ordered Lassere to provide his written discovery responses, which was almost one month <u>after</u> the August 29, 2014 discovery deadline had expired.

Because of the importance of the eyewitness testimony to both sides in this case and to cure the prejudice to defendants caused by plaintiff's untimely disclosure of their existence, the court continued the trial date and the discovery deadline solely to give defendants time to depose Denis and Turner and conduct any followup discovery that defendants might need after their depositions. Record Doc. No. 47.

Both witnesses testified at their depositions that plaintiff's counsel had recorded their statements soon after the incident. Following a status conference, because plaintiff's counsel asserted that the statements were protected by the work product doctrine, I ordered plaintiff to file a motion for protective order regarding the witness statements and submit the recordings to me for in camera review. I also ordered defendants to file an opposition memorandum, which must include the complete transcripts of the two depositions, and in which defendants could seek sanctions for plaintiff's discovery misconduct, if they wished. Record Doc. No. 47.

Lassere has submitted the recordings to the court. Record Doc. No. 49. He argues in his motion that the statements were taken in anticipation of litigation and are attorney work product protected from disclosure by Fed. R. Civ. P. 26(b)(3). He contends that defendants cannot establish that they have substantial need for the materials to prepare their case and that they cannot, without undue hardship, obtain their substantial equivalent by other means. Lassere argues that defendants have deposed both witnesses and that there is no evidence that the witnesses' current recollections are so poor that their depositions are not the substantial equivalent of their prior statements.

Defendants filed a timely memorandum in opposition that includes the complete transcripts of the two depositions. Record Doc. No. 50. Defendants argue that the factual portions of the recorded statements are not attorney work product and should be produced with the attorneys' questions redacted, if necessary. They also contend that,

3

even if the witness statements are work product, defendants have substantial need of the materials to prepare their case. They argue that the depositions are not the substantial equivalent of the statements because the statements were taken soon after the incident, while the depositions were taken almost 21 months later, when the witnesses' memories may have faded and their deposition testimony may be inconsistent with their statements. Defendants do not seek any sanctions.

Fed. R. Civ. P. 26(c)(1) governs motions for protective orders. The Rule provides in pertinent part: "A party or any person from whom discovery is sought may move for a protective order . . . The court <u>may</u>, <u>for good cause</u>, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms, . . . for the . . . discovery." The requirement "of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" <u>In re Terra Int'l, Inc.</u>, 134 F.3d 302, 306 (5th Cir. 1998) (quoting <u>United States v. Garrett</u>, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); <u>see also</u> <u>United States v. Talco Contractors, Inc.</u>, 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

> Fed. R. Civ. P. 26(b)(3) codifies the work product doctrine.
>
> (A) <u>Documents and Tangible Things</u>.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
> >    (i) they are otherwise discoverable under Rule 26(b)(1); and
> >    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) <u>Protection Against Disclosure</u>.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A), (B).

Plaintiff, as the party resisting discovery, bears the burden of <u>proof</u> to demonstrate the existence of any privilege in the materials, including application of the work product doctrine.  <u>United States v. Newell</u>, 315 F.3d 510, 525 (5th Cir. 2002); <u>In re Santa Fe Int'l Corp.</u>, 272 F.3d 705, 710 (5th Cir. 2001); <u>Hodges, Grant & Kaufman v. United States</u>, 768 F.2d 719, 721 (5th Cir. 1985); <u>Ingraham v. Planet Beach Franchising Corp.</u>, No. 07-3555, 2009 WL 1076717, at *1 (E.D. La. Apr. 17, 2009); <u>Kiln Underwriting Ltd. v. Jesuit High Sch.</u>, No. 06-04350, 2008 WL 108787, at *4-5 (E.D. La. Jan. 9, 2008) (citing <u>Hodges</u>, 768 F.2d at 721); <u>United States v. Impastato</u>, No. 05-325, 2007 WL 2463310, at *2 (E.D. La. Aug. 28, 2007) (citing <u>United States v. Harrelson</u>, 754 F.2d 1153, 1167 (5th Cir. 1985); <u>United States v. Kelly</u>, 569 F.2d 928, 938 (5th Cir. 1978)).  Plaintiff has

tried to meet this evidentiary burden with an affidavit by one of his counsel and excerpts from Turner's and Denis's depositions. Record Doc. Nos. 48-2, 48-3.

Work product protection from discovery extends to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney . . . or agent)," Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the "underlying relevant facts." Blockbuster Entm't Corp. v. McComb Video, Inc., 145 F.R.D. 402, 403 (M.D. La. 1992) (citing United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982); Hill Tower, Inc. v. Dep't of Navy, 718 F. Supp. 562, 566 (N.D. Tex. 1988)); accord 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024, at 494 (3d ed. 2010).

The work product "privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Udoewa v. Plus4 Credit Union, 457 F. App'x 391, 393 (5th Cir. 2012) (quoting In re Kaiser Alum. & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000)) (internal quotation omitted) (emphasis added). "The mere fact that a document is prepared when litigation is foreseeable does not mean the document was prepared in anticipation of litigation . . . ." Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., 19 F.3d 1432, 1994 WL 58999, at *3 (6th Cir. 1994) (citing Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)).

If the party claiming the protection of the work product doctrine carries its burden to establish that the materials were created in anticipation of litigation and are work product, the party who seeks the discovery then must bear its own evidentiary burden to show both that it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means. Hunkin v. Cooper/T. Smith Stevedoring Co., No. 08-456, 2010 WL 93856, at *2 (W.D. La. Jan. 7, 2010) (citing Fed. R. Civ. P. 26(b)(3); In re Int'l Sys. & Controls Corp. Secs. Litig., 693 F.2d 1235, 1240 (5th Cir. 1982); Hodges, 768 F.2d at 721); accord Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc., 219 F.R.D. 396, 400 (E.D. Tex. 2003) (citing same cases).

> Substantial need and undue hardship are related inquiries because it is necessary to define the information for which a party has a substantial need in order to determine whether substantially equivalent information can be obtained without undue hardship. See, e.g., Fisher v. Nat'l R.R. Passenger Corp., 152 F.R.D. 145, 152 (S.D. Ind. 1993) ("Existence of a viable alternative to invading work product, will, in most situations–and in this case–negate any substantial need."); Fletcher v. Union Pac. R.R. Co., 194 F.R.D. 666, 671 (S.D. Cal. 2000) (noting "considerable overlap between substantial need and undue hardship," and explaining that "[t]he extent to which a party needs information contained in an opponent's work product depends, in large part, on whether the work product is unique."). See also Int'l Sys., 693 F.2d at 1241 (noting that substantial need and undue hardship "are part of a balancing test"). . . . "[B]road unsubstantiated assertions of unavailability or faulty memory are not sufficient" to demonstrate undue hardship. Int'l Sys., 693 F.2d at 1240.

S.E.C. v. Cuban, No. 3:08-CV-2050-D, 2013 WL 1091233, at *3, 6 (N.D. Tex. Mar. 15, 2013).

Even if the discovering party is able to show substantial need and undue hardship, opinion work product merits special protection from discovery pursuant to Rule 26(b)(3)(B). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238-39 (1975).

> [W]hen a party is ordered to produce its work product because the discovering party has made the showing mandated by Rule 26(b)(3)(A)(i) and (ii), Rule 26(b)(3)(B) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Thus, tangible materials that contain the mental impressions, conclusions, opinions or legal theories of a party's attorney or representative, otherwise known as "opinion work product," are afforded a high degree of protection.

In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2010 WL 2522968, at *1 (E.D. La. June 14, 2010) (additional quotation omitted) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981); Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir. 1991); Int'l Sys. & Controls, 693 F.2d at 1240; Bonneau v. F & S Marine, Inc., No. 09-3336, 2010 WL 1254552, at *2 (E.D. La. Mar. 25, 2010); Bross v. Chevron U.S.A. Inc., No. 06-1523, 2009 WL 854446, at *5 (W.D. La. Mar. 25, 2009); Blockbuster Entm't, 145 F.R.D. at 403-04) (additional citations omitted).

Opinion work product generally includes "'such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses.'" Frazier v. Se. Pa.

Transp. Auth., 161 F.R.D. 309, 318 (E.D. Pa. 1995) (quoting Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985)); accord In re Equal Emp't Opportunity Comm'n, 207 F. App'x 426, 432 (5th Cir. 2006) (citing Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 160 (1975)). Therefore, when documents "contain the mental impressions, conclusions, opinions, and legal theories of attorneys involved" in the case, "despite any 'necessity' arguments, under Rule 26(b)(3), the district court cannot order their production." Id. at 433.

Nonetheless, "objective information, such as verbatim witness testimony, is not opinion work product, provided that the [attorney's] . . . compilation or organization of such information does not reveal the lawyer's selection process and thus his mental impressions." Cuban, 2013 WL 1091233, at *3 (quotation omitted) (citing Sporck, 759 F.2d at 315-16; Kent Corp. v. NLRB, 530 F.2d 612, 624 (5th Cir. 1976); Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C., 258 F.R.D. 149, 161 n.8 (S.D. Tex. 2009)).

I have reviewed in camera the recorded statements of Denis and Turner. Plaintiff's counsel states in his affidavit that the statements were taken in his law office on January 26, 2013. The recordings confirm that date and reveal that the two statements were taken separately and consecutively. Counsel also states that the witnesses were brought to his office, at his request, by Lassere to give statements so that plaintiff's counsel could evaluate the witnesses and use information from them to develop the legal theories and trial strategies to be used in this litigation and to prepare plaintiff's

complaint. Counsel states that unnamed "plaintiff counsel" asked questions of the witnesses during the recordings, "which reflected our interest in certain facts that had legal significance to us." He avers that the "content of the statements do not differ in any meaningful detail from the deposition testimony recently given by the witnesses." Record Doc. No. 48-3. Although neither counsel's affidavit nor the recordings specify who was present during the statements, there is a male voice and a female voice on both recordings, in addition to the witness.[1]

I find that the statements are attorney work product. Counsel's affidavit, the recordings and the testimony of the two deponents establish that the statements were taken on January 26, 2013 with the primary motivating purpose of aiding in possible future litigation. Lassere apparently had already retained counsel by that date to offer legal advice concerning claims that he might bring against the Sheriff and the deputies involved in the shooting death of his mother.

However, based on my close review and comparison of the statements with the transcripts of Denis's and Turner's depositions, I find that defendants have substantial need for the statements to prepare their case and cannot, without undue hardship, obtain their substantial equivalent by other means. I do not agree with plaintiff's counsel's self-serving opinion in his affidavit that the recorded statements do not differ in any

---

[1] In her deposition, Denis identified two plaintiff's counsel who were present during her statement.

meaningful detail from the deposition testimony. Each statement contains some averments that are inconsistent with the same witness's testimony and some that are inconsistent with the other person's recorded statement.

The discrepancies between Turner's recorded statement and her deposition are not glaring, but there are some, including inconsistencies in her recollection of whether Mrs. Lassere's hands were on the steering wheel when the shooting began and where Turner herself was located when shots were fired. Turner testified that Jenkins recorded her statement during a telephone conversation on the day after the shooting and that he did not record her when she went to his office in late January 2013, while the recording itself indicates the opposite. There are more significant differences between Turner's recorded statement and her daughter's recorded version, such as what first drew their attention to the incident outside, where the police car(s) were parked, where the light was coming from, what Turner said when she realized who was in the car, when the bedroom window was raised, when Turner was in the living room and/or talking on her cellphone, and when Denis was talking on her own cellphone.

Denis's deposition testimony contains some substantial differences from her recorded statement. Most significantly, Denis testified that no police officer ever mentioned anything about a gun in the vehicle. Record Doc. No. 50-1, Denis deposition at pp. 58, 81-82. However, she stated in the recording that the "lady cop" initially on the scene tried to reason with Mrs. Lassere and get her out of the car. Denis plainly stated

11

that she heard this officer say: "Ma'am, we don't want to hurt you. Put the gun down. I just want to come and talk to you. Would you let me come and talk to you? I only have my flashlight." Recorded statement of Denis at 12:24:48 - 12:25:04. This directly contradictory statement about a critical fact establishes that defendants have substantial need for her statement to prepare and present their case and cannot, without undue hardship, obtain its substantial equivalent by other means.

Denis also testified that she could not see whether Mrs. Lassere actually put her hands out of the driver's side window. Record Doc. No. 50-1 at pp. 48-49, 53-54. However, she said in her recorded statement that she "clearly" saw Mrs. Lassere "stick her fingers, 4 fingers of each hand out of the window and dangled them." Recorded statement of Denis at 12:28:55 - 12:29:19.

Denis responded "No" to the deposition question whether she heard any female officers "making commands." Record Doc. No. 50-1 at p. 46. While this testimony arguably may not directly contradict her account of the female officer's statements to Mrs. Lassere, as one might not consider those statements to be "commands," they are nevertheless questionable as to their consistency with the statement. Denis also failed to testify, unlike her recorded statement, that the female officer was trying to reason and negotiate with Mrs. Lassere about the same time as a male officer was asking her for a telephone number of someone that they could call, repeating the phone number and then telling Mrs. Lassere that no one answered. Denis's complete failure to mention the

female officer's statements in her testimony means that the testimony is not the substantial equivalent of her recorded statement.

Additional inconsistencies between Denis's deposition testimony and her recorded statement include whether she heard "yelling" while in the bedroom (as she said in her statement) or merely "something muffling" or "muffled" (as she testified); her statement that Mrs. Lassere more than once "was moving around in the car" and "making the cops nervous;" where the officers with the body shields were standing; where Mrs. Lassere's hands were located immediately before Denis heard a first volley of shots; the fact that she took pictures with her cellphone, which she did not mention in her recorded statement; her recorded statement that Mrs. Lassere "started reaching around the car" from the driver's seat to the back seat on the passenger side immediately before she was shot, while Denis testified that Mrs. Lassere reached down along the seat line between her seat and the front passenger seat.

Denis's statement also differs from Turner's about whether they saw flashing lights initially from the bedroom or not until they went to the front door; whether there was a police car parked behind Mrs. Lassere's car; whether Turner went outside onto the porch; and whether the officers had a spotlight or only individual flashlights shining into Mrs. Lassere's car.

Turner and Denis both said in their recorded statements that the police officers initially on the scene told Mrs. Lassere that she had been pulled over for driving with her

13

headlights off, but neither Turner nor Denis mentioned that fact in her testimony. Similarly, both witnesses testified that the bedroom window was opened at some point so they could hear better, but neither one mentioned that in her recorded statement, and both said in their statements that they could hear the officers clearly throughout the incident.

All of the inconsistencies described above convince me that defendants have substantial need for the two recorded statements to prepare their case and cannot obtain their substantial equivalent by other means. In addition, plaintiff's failure to disclose the names of the witnesses as required by Fed. R. Civ. P. 26(a)(3)(A)(i) and the court's scheduling orders deprived defendants of the opportunity to obtain the substantial equivalent of the statements at an earlier date.

I further find that disclosure of the statements will not reveal opinion work product. The great majority of each statement consists of factual narrative, which is not opinion work product. The two attorneys ask occasional questions to clarify details of each witness's narrative, but the questions do not reveal the lawyer's mental impressions to any great degree. It cannot be said that the questions reveal the attorneys' legal strategy, intended lines of proof, evaluation of the strengths and weaknesses of the case, or any inferences they might have drawn from the statements.

Accordingly, IT IS ORDERED that plaintiff's motion for protective order is DENIED and that he must produce the two audio recordings to defendants no later than December 22, 2014.

New Orleans, Louisiana, this \_\_\_15th\_\_\_ day of December, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE