UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NORVEL LASSERE | CIVIL ACTION |
| VERSUS | NO. 13-5430 |
| KEITH CARROLL ET AL. | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

This case arose from the fatal shooting of plaintiff's 60-year-old mother by defendant St. John the Baptist Parish sheriff's deputies following a traffic stop for driving at night without illuminated headlights. During the incident, decedent, Barbara Lassere, showed officers that she had a gun and said she would shoot them if they did not leave her alone.

At trial, defendants moved at the conclusion of plaintiff's evidence for dismissal of all federal civil rights claims under 42 U.S.C. § 1983. The court indicated during argument that it was inclined to grant the motion. Plaintiff then moved to dismiss those claims voluntarily. The court granted plaintiff's motion and dismissed the federal claims with prejudice by court order. Fed. R. Civ. P. 41(a)(2). On defendants' motion, without objection from plaintiff, the court also dismissed all state law claims against one defendant, but denied defendants' Rule 50 motion as to plaintiff's state law claims against the remaining defendants. Thus, the only claims submitted to the jury were plaintiff's Louisiana state law negligence claims against defendants Deputies Steven

Dailey, Jose Rel, Cleven Remondet and Michelle Pierson; and against Sheriff Michael Tregre in his official capacity under the doctrine of respondeat superior.

The jury returned a verdict in favor of plaintiff in the net amount of $250,000.00, after reducing the gross amount of damages by 50% fault attributable to the decedent herself. The jury assigned 20% fault to defendant Dailey, the shooter; and 10% fault to each of the remaining three defendants, Deputies Pierson, Rel and Remondet.

Defendants have now renewed in writing their Rule 50 motions asserted orally at trial by seeking judgment as a matter of law, notwithstanding the verdict, or, alternatively, a new trial under Fed. R. Civ. P. 59(a). Record Doc. No. 66. Essentially, defendants argue that the evidence was insufficient to support either the liability or the damages verdicts.

## ANALYSIS

(A)   Standards of Review

Defendants move for judgment as a matter of law under Fed. R. Civ. P. 50. Judgment as a matter of law

> is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." There is no legally sufficient evidentiary basis when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." We are to review the record as a whole, drawing all reasonable inferences in favor of the nonmoving party and without making credibility determinations or weighing the evidence. We also "give credence to . . . that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence

comes from disinterested witnesses."  Finally, there must be more than a mere scintilla of evidence in the record to render the grant of [judgment as a matter of law] inappropriate.

Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 218 (5th Cir. 2001) (quoting Fed. R. Civ. P. 50(a);[1] Rubinstein v. Admin'rs of Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 151 (2000)) (citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 251 (1986); Krystek v. Univ. of S. Miss., 164 F.3d 251, 255 (5th Cir. 1999)) (additional internal quotations omitted); accord Effinger v. Cambridge Integrated Servs. Grp., 478 F. App'x 804, 806 (5th Cir. 2011); Manthos v. Jefferson Parish, 353 F. App'x 914, 919 (5th Cir. 2009).

Defendants alternatively request a new trial under Rule 59(a), essentially on grounds that the evidence was insufficient to support the jury's verdict either on liability or the amount of damages, which defendants characterize as "excessive" and a "large damage award" and which they request be lowered via remittitur.  Record Doc. No. 66-1 at p. 15.

Under Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Rule 59 does not specify the permissible grounds for a motion for new trial, but it is clear that "[n]ew

---

[1] The quoted language of Rule 50 has been revised since the Wallace decision, but without substantive amendment to the stated standard.

trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence." Dawson v. Wal-Mart Stores, Inc., 978 F.2d 205, 208 (5th Cir. 1992); accord Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C., 561 F. App'x 327, 338 (5th Cir. 2014) (citing Carter v. Fenner, 136 F.3d 1000, 1010 (5th Cir. 1998)); Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 838-39 (5th Cir. 2004). When considering new trial motions, the court may set aside the verdict even if there is substantial evidence to support it. Moreover, the court "is not required to take that view of the evidence most favorable to the verdict-winner" and "is free to weigh the evidence." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice and Procedure § 2806, text accompanying nn. 6-10 (3d ed., on Westlaw at FPP § 2806); accord Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 270 n.2 (5th Cir. 1998). "The district court abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict." Seidman v. Am. Airlines, Inc., 923 F.2d 1134, 1140 (5th Cir. 1991) (quotation omitted); accord Jackson v. Stranco, Inc., 514 F. App'x 528, 530-31 (5th Cir. 2013) (citing Whitehead, 163 F.3d at 269).

Both sides agree, based upon Louisiana case law cited in their written submissions, Mathieu v. Imperial Toy Corp., 646 So. 2d 318, 325 (La. 1994); Kyle v. City of New Orleans, 352 So. 2d 969, 973 (La. 1977), that the court should consider the following factors in evaluating the validity of the verdict in the context of this motion: (1) the

known character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment. Record Doc. Nos. 66-1 at p. 5 and 68 at p. 11.

Evaluating these factors in this case and viewing the evidence as a whole, I find that the jury's verdict, including its negligence findings, comparative fault assessments and damages amount, were supported by the evidence presented at trial and consistent with controlling state law.

I view the first two factors as presenting equilibrium, weighing in favor of neither the deputies' nor plaintiff's view. On one hand, the deputies knew that Barbara Lassere had a gun and had threatened to shoot them unless they left her alone during the initial traffic stop. On the other hand, no evidence was presented that decedent had any history of criminal activity, mental illness or violent behavior. Before she was shot, the deputies had obtained both her driver's license and automobile license plate number, giving them a means to check her background. The testimony that the deputies heard a gunshot immediately before decedent was shot and killed was subject to substantial question, given the paucity of physical evidence to support that testimony and the fact that no deputy saw a gun in decedent's hand once her car was stopped for the second time and surrounded by deputies.

The third factor weighs in favor of the defendant deputies. Although the incident began as a minor traffic stop based on Lassere driving at night without illuminated headlights, it was decedent herself who escalated the offense to something much more serious by threatening to shoot officers with a gun.

In contrast, the fourth, fifth and sixth factors weigh heavily against the deputies' position. The chances of decedent's escape if the means used by the deputies had not been employed were minimal. When Lassere left the scene of the initial traffic stop, she proceeded <u>not</u> at high speed that might have indicated a serious attempt to escape, but at an extremely slow speed that easily allowed the deputies to surround her when she arrived, not at some remote or distant place where a serious attempt to escape might have been made, but at a familiar residence and neighborhood. Alternative methods of arrest clearly existed – for example, surrounding the vehicle, securing the perimeter and waiting out decedent, while allowing a reasonable period of time for her son or others whom the deputies had initially attempted to contact to arrive – rather than the imprudent plan adopted by the deputies of smashing the car window behind decedent's head and then intending to drag her out of the car. The multi-officer and law enforcement vehicle presence at the scene, including a large police K-9 unit dog; the substantially superior physical size and strength of the deputies as compared to the 60-year-old female arrestee; and the vastly superior weaponry deployed by the officers against Lassere are all factors

that weigh substantially against the finding of fault-free reasonableness by the deputies that defendants proffer in this motion.

The dictionary definition of the final factor – exigency – stresses urgency in referring to exigent circumstances. The jury could reasonably have concluded – as I did – that Remondet's explanation for his decision to cease his efforts of only 15-20 minutes to coax decedent out of the car and instead to direct Rel to smash the car window behind her head, all of which precipitated Lassere's sudden movement and Pierson's erroneous shout of "gun," when she saw no gun, and Dailey's firing of shots, was unconvincing as to urgency.

There can be no question, as the jury found, that the decedent's own actions were a substantial cause of the resulting tragedy. Similarly, however, the evidence is sufficient to support the jury's concomitant conclusion that the fault of the officers also contributed to the sad consequences. Specifically, the evidence supported the jury's findings that Remondet's command to break the rear driver's side window close to Lassere's head, and Rel's action in carrying out the command, with a plan to then forcibly extract her from the car, was unreasonable, especially in light of the evidence that Lassere had complied with Remondet's requests to provide him with phone numbers of relatives and her driver's license only minutes before; that a mere 15-20 minute period of talking with Lassere, a 60-year-old woman whose identity the deputies knew or should have known after obtaining her car license plate number and driver's license, with no evidence of any

past criminal, mental health or violent history, before smashing a car window near her head in an attempt forcibly to remove her from the car was an unreasonable breach of their duty of care to this detainee; that Pierson shouting "gun" when she did not see a gun, much less that she did not see either that it was in Lassere's hand or in close proximity to her, was unreasonable under the circumstances; and that Dailey's testimony that Lassere not only reached toward the passenger side of the driver's seat where they assumed the gun was located, but also turned back toward Dailey with her right arm and hand in a shooting pose, was not credible given the physical evidence reflected in the autopsy report, which indicated that Lassere's entry wounds were to the back side of her body on a path inconsistent with the positioning described by the deputy. The evidence was therefore sufficient to support a jury finding that defendants' actions were negligent. Given the overall body of evidence presented at trial, the jury could reasonably have concluded that the attribution of 50% fault to defendants as a whole and the specific percentages of fault assigned to each individual defendant were appropriate.

As to damages, I cannot conclude, as defendants argue, that the amount awarded was excessive or otherwise unsupported by the evidence. The testimony of plaintiff, Norvel Lassere, focused almost entirely on damages. While his testimony was emotional in part, it was delivered in a mostly straightforward, calm and dignified way, without undue hyperbole or inflammatory language or demeanor. His testimony was necessarily reflective of the nature of the legally recoverable damages, which included severe

emotional distress, pain and suffering, both on his own behalf and by his mother, since the evidence indicated that she survived the shooting for a short period of time.

The amount awarded was substantially less than the amount requested by plaintiff's counsel in his closing argument and substantially less than any higher benchmark that might have sounded warning signals concerning a jury reaction unsupported by the evidence. In addition, the dollar amount awarded in damages was consistent with amounts awarded by juries applying Louisiana negligence law in other death cases. See Smith v. La. Farm Bureau Cas. Ins. Co., 35 So. 3d 463 (La. App. 2d Cir. 2010) (affirming total wrongful death damages, all components, in the amount of $827,000.00); Barthel v. La. Dep't of Transp. & Dev., 917 So. 2d 15 (La. App. 1st Cir. 2005) ($500,000.00 in wrongful death damages and $50,000.00 in survival damages based on only several minutes of survival of automobile accident); Farmer v. Willis-Knighton Med. Ctr., 109 So. 3d 15 (La. App. 2d Cir. 2012) ($250,000.00 in survival damages and $60,000.00 each for 13 surviving adult children in wrongful death damages).

Senior Judge Patrick Higginbotham of the United States Court of Appeals for the Fifth Circuit has insightfully written about the "need" for open, public trials, "and a steady stream of them, to ground our normative standards – to make them sufficiently

clear that persons can abide by them in planning their affairs."[2]  In my view, this is especially true in cases involving elastic and evolving legal standards emanating from state tort law and difficult and trying factual circumstances like those presented in this case, including such questions as what kind of conduct should be expected from ordinarily prudent persons, whether those persons are detainees or police officers.  Juries are the principal type of factfinder from which such standards should be expected to emanate.  For all of the foregoing reasons, I find that the jury's verdict in this case should not be disturbed.

Accordingly, defendants' motion for judgment notwithstanding the verdict or alternatively for a new trial is DENIED.

New Orleans, Louisiana, this ___18th___ day of March, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]P. Higginbotham, So Why Do We Call Them Trial Courts?, 55 SMU L. Rev. 1405, 1423 (2002).